IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

HAROLD JEFFREY STEWART, #AO1359  :

   Plaintiff  :

   v.  :  CIVIL ACTION NO. PJM-07-488

WARDEN, et al.  :

   Defendants  :

## MEMORANDUM OPINION

Before the Court is Harold Jeffrey Stewart's civil rights action filed pursuant to 42 U.S.C. §1983. Stewart, who is proceeding pro se, is a detainee at the Prince George's County Detention Center. Counsel for Defendants has filed a Motion to Dismiss or in the Alternative Motion for Summary Judgment. Stewart has filed a reply in opposition. Defendants rely on materials beyond the scope of the Complaint, and the Motion shall be construed as one for summary judgment pursuant to Fed R. Civ. P. 56. Upon review of the pleadings, exhibits and applicable law, the Court finds a hearing unnecessary, and will grant Defendants' Motion for Summary Judgment by separate order.

### Background

Stewart stands charged with first-degree murder. His first trial in the Circuit Court for Prince Georges County ended in mistrial on February 7, 2006. Plaintiff has been in custody since his arrest on July 12, 2005, and is awaiting re-trial.[1]

Stewart has been evaluated several times by a psychologist through the State of Maryland Department of Health and Mental Hygiene. One evaluation was performed at the request of

---

[1] *See* Criminal Case Number CT051295X (Circuit Court for Prince Georges County).

Stewart's counsel to evaluate his competence to stand trial. Other evaluations were made at the request of the Circuit Court.

Defendant's verified pleadings show that on October 13, 2005, another inmate, Sean McIntosh, entered Stewart's cell at the Detention Center and the two engaged in a fight. According to the incident report, Stewart "appeared to have a cut above his right eye and some facial bruising." Def. Ex. 1. Both inmates were taken to the medical unit. Under the "inmate's comments" section of the report, it reads;"Got in fight after argument over nothing important. Just commissary." *See id.*

Stewart agreed to and has been placed on protective custody since November 15, 2005, after he received written death threats. Def. Ex. 1, p. 120. The Director of the Detention Center met with Stewart's counsel, Ms. Callis, to discuss the death threats and how to best protect him.[2] Defendants records show that Plaintiff did not know who issued the threats and did not provide the names of any known enemies. *See id.* Stewart, however, claims that prison officials knew the name of the "detail worker" who slipped the death threats under the door of his cell. Plaintiff's Reply, p. 12. The "detail worker" involved, Robert Farrell, told prison officials that he did not know the name of the individuals who gave him the threatening notes to pass to plaintiff. Def. Ex. 1, p. 172. There have been no reports of threats or instances of violence against Stewart since his assignment to administrative segregation, a fact Stewart does not dispute. Stewart has not submitted any complaints of breaches in protective custody to prison authorities.

---

[2]Stewart fired Callis, his first counsel, an attorney with the Office of the Public Defender. Plaintiff then hired private counsel and subsequently fired him. Stewart has filed complaints with the Grievance Commission concerning the representation provided by both attorneys. Complaint; Def. Memorandum, p. 1. Electronic court dockets maintained by the state indicate that the Public Defender is again representing Stewart in his criminal proceeding.

While in custody Stewart has been treated for dry and itchy skin. Stewart's medical records show that on September 30, 2006, he was seen in the detention center medical unit complaining of "dermititis [sic] spreading on my left ear as well as my privates requesting Flourinide Acetate Cream." Def. Ex. 1.  On October 6, 2006, medical personnel noted dryness and redness a around Stewart's ear and groin, and prescribed hydrocortisone cream.  Stewart was seen during a follow-up examination on November 9, 2006.  Stewart was again examined on November 15, 2006, for dermatitis and medication was prescribed.   Stewart disputes whether his prescription was filled. Reply, p. 35.

During his detention, Stewart has requested legal materials from the library at the detention center.  The library staff has explained to Stewart how to use the library and request materials. The materials are brought to Stewart after he submits a request. Def. Ex. 1, p. 27.   After Stewart filed a grievance complaining that twenty-five library requests he filed went unanswered, library staff investigated and were unable to locate any unanswered requests. *See id.*

### Standard of Review

Summary judgment is granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  This does not mean that any factual dispute will defeat the motion.

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F. 3d 514, 525 (4th Cir. 2003). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002). The Court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

Stewart raises claims for failure to protect, denial of adequate medical care, and denial of access to legal materials and the prison library. Specifically, he alleges that although he is on administrative protective custody, the "protective order is constantly breached." Next, he claims that he suffered an attack which resulted in partial paralysis of his left eye and cheek. Lastly, he alleges that he has received death threats which were improperly investigated. Stewart also contends that he has been denied appropriate treatment for dermatitis, resulting in eye swelling, scarring and abrasions.

Although the Warden is named as a defendant in this action, Stewart fails to allege any personal involvement by the Warden in any of the actions on which the Complaint is predicated. To the extent Stewart intends to hold the Warden liable for the actions of subordinates, the doctrine of vicarious liability is not applicable in a §1983 action. *See Polk County v. Dodson,* 454 U.S. 312, 325

(1981); *Monell v. Department of Social Services*, 436 U.S. 312, 325 (1981); *Vinnedge v. Gibbs*, 550 F.2d 926, 927-929 (4th Cir. 1977). Liability in a § 1983 action on the part of a supervisory defendant requires a showing that the supervisor had actual or constructive knowledge of the subordinate's action and tacitly authorized or was indifferent to the prison officials actions which violate constitutional rights. *See Shaw v. Stroud,* 13 F. 3d 791, 799 (4th Cir. 1994); *Miltier v. Beorn*, 896 F. 2d 848 (4th Cir. 1990). Stewart has wholly failed to allege facts supporting such a claim against the Warden. He does not alleges the Warden had knowledge of any risk to Stewart, that the Warden acted with deliberate indifference, or that the Warden's conduct was causally related to any injury. Stewart has not satisfied the criteria for supervisory liability.

Similarly, it is clear that Plaintiff has brought his claim against Prince George's County based solely upon vicarious liability or *respondeat superior*, and therefore fails to state a cognizable federal claim. Plaintiff fails to claim that a custom, pattern, or practice of the county resulted in the alleged deprivation of his constitutional rights. For this reason, Plaintiff fails to state a justiciable claim against Prince George's County.

To state a claim under 42 U.S.C. § 1983, Plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the deprivation of that right was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). The Montgomery County Department of Corrections, a departmental agency of Montgomery County, does not have the capacity to sue and be sued. There is no provision in the Annotated Code of Maryland or in the Montgomery County Code which empowers the Department to sue or to be sued in its own right. As such, this defendant is not amendable to suit. Further, neither the "Library Staff" nor the "Medical Staff" is a "person" subject to suit under §1983.

**Failure to Protect Claims**

As a pretrial detainee, Stewarts claims are evaluated under the Due Process Clause of the Fourteen Amendment, rather than under the Eighth Amendment standards established for convicted prisoners. *See Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 ( 1970).  The due process rights of detainees are at least as co-extensive as the Eighth Amendment rights of convicted prisoners. *See Whisenant v. Yuam*, 739 F.2d 160, 163  n. 4 (4th Cir.1984); *Loe v. Armistead*, 582 F. 2d 1291, 1292 (4th Cir. 1978).  In order to prevail on a failure to protect claim, Plaintiff must show that Defendants had knowledge of a substantial or pervasive risk of serious harm and acted with deliberate indifference or disregard of a known serious harm to the inmate.  *See Farmer v. Brennan*, 511 U.S. 825 (1994). This he has failed to do.

**Breach of Protective Custody**

The record shows that after Stewart notified detention center officials of written death threats against him,   the matter was investigated and he was placed in protective custody where he has remained.  There have been no other reports of violence or threats against Stewart.  Accordingly, this claim lacks any basis in fact, and  will be denied.

**"Attack" on Stewart**

Stewart does not claim that the Warden or any other prison officials knew that inmate Sean McIntosh posed a danger to him or to any other person.  Stewart did not report any concerns about McIntosh to jail officials.[3]  Without any prior knowledge to a risk posed to Stewart, the Warden or

---

[3] Stewart had previously identified another inmate, Kevin Green, as a known enemy. Detention Center officials noted in Stewart's file that he and Green were to be housed separately. Kevin Green was released from the Detention Center on December 1, 2005.

other prison officials cannot have acted with deliberate indifference to his safety.[4]  Consequently, there is no factual basis to substantiate a failure to protect claim.

## Medical Claim

Pretrial detainees suffering from illness or injury are constitutionally entitled to receive needed medical treatment and may not be subjected to any form of punishment, since they have not yet been adjudicated guilty of a crime.  *See Gray v. Farley*, 13 F.3d 142, 146 (4th Cir. 1993); *City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 244-45 (1983).  A pretrial detainee proves a due process violation if he shows "'deliberate indifference to serious medical needs.'" *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir. 1988)(quoting *Estelle v. Gamble*, 429 U.S. 97 (1976)).

Assuming arguendo that Stewart has shown a serious medical need, he fails to demonstrate that any prison official acted with a "sufficiently culpable state of mind.*"  Wilson v. Seiter*, 501 U.S. 294, 298; *Farmer*, 511 U.S. at 825.  The verified medical records submitted by Defendant show that Stewart was examined and treated for his dermatitis on several occasions and was prescribed cortisone.

Correctional Medical Services, a private corporation, provides inmate medical services under contract.  The Warden is not responsible for medical services at the Detention Center.

---

[4] In his Reply, Stewart claims that Officer Layhan heard Sean McIntosh threaten to kill him as he was walking back from the pencil sharpener.  Stewart indicates McIntosh threatened him because he refused to "let him [McIntosh] continually mooch." Paper No. 33, p. 8.  Stewart does not indicate the date this occurred or provide reasons why he believes Officer Layhan heard the alleged threat. There is no record that Stewart advised prison officials of the threat in advance of the altercation.

Supervisory officials are entitled to rely on medical judgments made by medical providers. *See Miltier v. Beorn*, 896 F. 2d 848, 854-55 (4th Cir. 1990).[5]

### Access to Library

Prisoners are entitled to reasonable access to the courts. *See Wolff v. McDonnell*, 418 U.S. 539 (1974). In order to state a claim for denial of access to the courts based on an alleged inadequate access to the library or legal documents an inmate must demonstrate some actual harm or prejudice to his ability to communicate with the court. *See Lewis v. Casey,* 518 U.S. 343 (1996).

The record shows that when Stewart filed a grievance concerning some twenty-five unanswered requests for library materials, his concerns were investigated and no unanswered requests were found. Even were the Court to assume Stewart's allegations are true, he fails to allege actual harm. Stewart does not state whether the actions about which he complains caused him to miss court dates or deadlines, impeded his ability to pursue litigation, or interfered with his ability to communicate with the courts.[6] Absent allegation of specific, actual adverse consequences,

---

[5] If Stewart intends to raise a claim against the medical providers, he must do so in a separate complaint, providing the names of the individuals who provided inadequate treatment and dates when the inadequate medical treatment occurred. The Court will direct the Clerk to mail a 28 U.S.C. §1983 complaint form to Stewart in the event he intends to pursue his medical claims. Stewart should note, however, that to the extent his claim is based on the prescribing of hydrocortisone instead of the Flourinide Acetate Cream he requested, mere disagreement between the patient and medical provider about the course of treatment does not reflect deliberate indifference to support a claim of constitutional magnitude. *See Estelle,* 429 U.S. at 106.

[6] In addition to the instant proceeding, Stewart has filed complaints in six other actions. *See Stewart v. Warden*, et al. Civil Action No. PJM-07-1264; *Stewart v. State of Maryland, et al.* Civil Action No. PJM-07-1265; *Stewart v. Warden, et al.* Civil Action No. PJM-07-1266; *Stewart v. Simpson*, Civil Action No. PJM-07-1267; *Stewart v. State of Maryland, et al.* Civil Action No. PJM-07-1268; *Stewart v. State of Maryland, et al.* Civil Action No. PJM-07-1269.

Stewart has failed to state a claim for denial of access to the courts. Consequently, there is no basis to find any constitutional abridgement here and the claim will be dismissed.

## Conclusion

For the reasons stated herein, the Court concludes that summary judgment in favor of Defendants shall be entered. A separate Order follows.

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

October 10, 2007